JOHN L. BURRIS, Esq./ State Bar #69888
BENJAMIN NISENBAUM, Esq./State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200 Facsimile: (510) 839-3882

JAMES B. CHANIN, Esq./ State Bar #76043
Law Offices of James B. Chanin
3050 Shattuck Avenue
Berkeley, California 94705
Telephone: (510) 848-4752 Facsimile: (510) 848-5819
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

L.S., individually and as successor-in-interest to Decedent ERIK SALGADO by and through her guardian ad litem Michael Colombo; BRIANNA COLOMBO and FELINA RAMIREZ Parent of decedent,

Plaintiffs,

vs.

RICHARD HENDERSON, individually; ERIC HULBERT, individually; DONALD SAPUTA, individually, DOES 4-25, inclusive,
,

Defendants.

/

Case No. 3:20-cv-04637 VC

**SECOND-AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS AND WRONGFUL DEATH.**
**JURY TRIAL DEMANDED**

## INTRODUCTION

On June 2, 2020, in broad daylight, Defendant California Highway Patrol Officers RICHARD HENDERSON, ERIC HULBERT, and DONALD SAPUTA, opened fire on a red Dodge with license plates that had been reported lost or stolen, and which they were attempting to stop in their unmarked vehicles. The Dodge was contained and had effectively come to rest when the Defendants HENDERSON, HULBERT and SAPUTA initiated a hail of gunfire on the driver and passenger of the car, firing at least 40 gunshots at the vehicle, at a time when no

officer or civilian was in any danger, and Defendants had no reason to believe anyone inside the vehicle was armed with any weapon. Even the theft of the vehicle (or its license plates), for which the occupants of the vehicles were not suspected, did not occur by means of violence. Indeed, Defendants were only aware that the license plate attached to the vehicle had been reported lost or stolen, not the vehicle itself. Decedent ERIK SALGADO, the driver of the other vehicle, was the father of a young daughter. He was shot at least 18 times and was dead at the scene. His girlfriend, Plaintiff BRIANNA COLOMBO was in the passenger seat. Defendants shot her 3 times, including in the abdomen.

Defendants gave no warning they would shoot before they opened fire, intentionally positioned themselves at angles around the red Dodge where they would not shoot each other, and fired away over an extended period of time, executing Mr. SALGADO and severely injuring Plaintiff COLOMBO. The extended shooting by Defendants HENDERSON, HULBERT and SEPUTA was deliberately indifferent to human life, premeditated, and criminal.

On July 3, 2016, Defendant HENDERSON shot and killed another young man, 19-year-old Pedro Villanueva, under similar alleged circumstances in Fullerton, CA. Defendant HENDERSON is a defendant in that civil rights action currently pending in Federal court in the Central District of California (USDC-CACD Case No. 8:17-cv-01302-JLS-KES, currently on interlocutory appeal at the 9th Circuit following the denial of Defendants Motion for Summary Judgment based on qualified immunity, 9th Circuit Docket No. 19-55225). Neither incident was captured by bodycam or dash-cam video. Disturbingly, Defendant HENDERSON in that prior shooting made the exact same false claim as all three shooting Defendants make in the instant shooting, that he lost sight of a fellow officer while performing a felony stop of a vehicle. Defendant Henderson also inaccurately claimed that an officer in the Villanueva case had been run over by the vehicle in order to justify his shooting, when that did not happen. In the instant case, all three shooting defendant officers make the same inaccurate claim, when in fact the officer they all claimed thought had been run over had moved out of the potential path of the Dodge and onto a sidewalk, and the Dodge had veered away from that officer, prior to the shooting.

## I. JURISDICTION

1. This action arises under Title 42 of the United States Code, Sections 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in the City of Oakland, County of Alameda, California, which is within this judicial district.

## II. PARTIES

2. Plaintiff herein, L.S., is and was at all times herein mentioned a citizen of the United States residing in California. She is a minor and is the daughter and Successor-in-Interest to Decedent ERIK SALGADO, who died intestate and unmarried. Mr. SALGADO was 23 years old when he was killed by Defendants. She is represented in the instant action by and through her Guardian ad Litem MICHAEL COLOMBO.

3. Plaintiff herein, BRIANNA COLOMBO, is and was at all times herein mentioned a citizen of the United States residing in California. Ms. COLOMBO is 23 years old.

4. Plaintiff FELINA RAMIRIZ is Decedent SALGADO's mother and asserts violation of her 14th Amendment rights against interference with the familial relationship with her son caused by the conscience-shocking killing of her son.

5. Minor Plaintiff L.S., as Decedent ERIK SALGADO's only child, is his only Successor-in-Interest as defined in California Code of Civil Procedure section 377.11 and succeeds to Decedent ERIK SALGADO's interest in the instant action pursuant to California Code of Civil Procedure section 377.32. Minor Plaintiff L.S. has complied with the requirements of California Code of Civil Procedure section377.22 to establish her standing. Plaintiffs have complied with all administrative state law claim requirements for California state law causes of action.

6. Defendant RICHARD HENDERSON ("HENDERSON") is and was at all times mentioned herein a police officer employed by the State of California as an Officer for the California Highway Patrol ("CHP"). Defendant HENDERSON was acting in the course and scope of employment as a police officer for the CHP at the time of the subject-incident shooting.

7. Defendant ERIC HULBERT ("HULBERT") is and was at all times mentioned herein a police officer employed by the State of California as an Officer for the California Highway Patrol ("CHP"). Defendant HULBERT was acting in the course and scope of employment as a police officer for the CHP at the time of the subject-incident shooting.

8. Defendant DONALD SAPUTA ("SAPUTA") is and was at all times mentioned herein a police officer employed by the State of California as an Officer for the California Highway Patrol ("CHP"). Defendant SAPUTA was acting in the course and scope of employment as a police officer for the CHP at the time of the subject-incident shooting.

9. Plaintiffs sue the remaining defendants by fictitious DOE names. Plaintiffs are informed and believe and therefore allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Each defendant DOE was an integral participant in the use of unreasonable force against Mr. SALGADO. Plaintiffs will amend their complaint to state the names and capacities of DOES 4-25, inclusive, when they have been ascertained.

8. In engaging in the conduct described herein, Defendant police officers acted under the color of law and in the course and scope of their employment with the California Highway Patrol. In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions and as police officers employed by the California Highway Patrol.

## III. STATEMENT OF FACTS

9. On the afternoon of June 2, 2020, Decedent ERIK SALGADO and his girlfriend, Plaintiff BRIANNA COLOMBO, were in red Dodge Challenger on Cherry Street in Oakland, near Mr. SALGADO's mother's home, Plaintiff Ramirez. Unbeknownst to Plaintiffs SALGADO and COLOMBO, several unmarked CHP officers were pursuing the red Dodge driven by Mr. SALGADO. No one in the red Dodge was armed, and the pursuing CHP officers had no articulable basis to believe that anyone in the red Dodge was armed with any weapons. The license plate on the red Dodge (not the vehicle itself, to the Defendants knowledge) had been

reported as lost or stolen.  Defendants had no information that the vehicle was taken by force, that Mr. SALGADO was involved with any robbery, or how Mr. SALGADO came to be in possession of the red Dodge, or the license plate attached to it.

10. A police K-9 vehicle driving North on Cherry Street incidentally blocked the path of the red Dodge's travel while defendant followed it. Defendants planned to avoid a "pincer" trap, recognizing the high risk involved in using their police vehicles to try to pin a vehicle from the front and the rear. A CHP truck containing CHP officer Michael Diehl and other officers was driving behind the K-9 vehicle. The red Dodge was effectively in the "pincer" defendants had planned to avoid. Defendants made no effort to back out of the "pincer". Instead, Defendants went through with purportedly unplanned "pincer" trap they specifically intend to avoid performing. The CHP truck containing Officer Diehl stopped behind the K-9 vehicle in the roadway. Vehicles parked properly next the curb on the both sides of the street were on either side of the K-9 vehicle and CHP truck.  Defendant HENDERSON's vehicle stopped behind the red Dodge.  Defendant HENDERSON a Sig-Sauer M400 slung over his right shoulder, sat in the passenger seat of the police vehicle directly behind the red Dodge.

11. The red Dodge attempted to navigate past the K-9 vehicle in front of it, and while attempting to pass slightly bumped into the unmarked car. The car then backed up and slightly bumped into a CHP car directly behind it.  Officer Diehl exited the CHP truck and ran toward the driver's door of the K-9 vehicle. Thereafter Mr. SALGADO again attempted to squeeze by the K-9 vehicle, and the CHP truck behind it.  Officer Diehl noted that Mr. SALGADO could have taken one of two paths to drive past the vehicles: One in which Officer Diehl would be in danger of being run over by the red Dodge if he did not move, and another in which he would not be in danger of being run over from the red Dodge even if he did not move.  Following CHP training and policy, which dictates that officers move out of the way of a moving vehicle if that would eliminate the danger of being run over and they are able to do so, Officer Diehl scrambled backwards and over the hood of a parked vehicle and onto the sidewalk. Officer Diehl looked back and saw that the red Dodge had taken the alternate route, the route that would not have led to Officer Diehl being run over. In any event, after the red Dodge passed him, and Officer Diehl

was on the sidewalk, he ran back toward the red Dodge, which was coming rest, saw Defendant HENDERSON pointing his rifle at the red Dodge from behind the red Dodge, and then scrambled out of the way again to avoid being shot by Defendant HENDERSON, who he saw and heard open fire on the red Dodge. Neither Officer Diehl, nor anyone else, was in any danger at that time of being run over by the red Dodge. No shots were fired by any officer until after Officer Diehl had moved to a position of safety, and Mr. SALGADO had veered away from the position Officer Diehl had been in at the side of the K-9 vehicle an appreciable time before any shots were fired.

12. Defendant HENDERSON claimed he saw the red Dodge run over Officer Diehl, while he was behind the red Dodge. He claimed he mistakenly believed Officer Diehl was Defendant HULBERT, and claims he held his fire to avoid striking the officer, while yelling for Defendant Officer SAPUTA to shoot. Defendant HENDERSON ran toward the back of the red Dodge, and opened fire with his rifle when he got to within 5-10 feet of the back of the red Dodge, specifically aiming where he the driver's center mass would have been located. Defendant HENDERSON emptied his rifle, firing all 30 shots from the full 30 cartridge magazine, striking Decedent several times center mass.

13. Defendant SAPUTA, who had run at an angle toward the rear of the driver's side of the red Dodge also had a rifle pointed at it. Defendant SAPUTA opened fire on the red Dodge, aiming at the driver's side. Meanwhile, Officer Diehl had moved to a position of safety, and after the red Dodge veered away from Officer Diehl's prior position, when no one was in immediate danger from the red Dodge.

14. Defendant HULBERT had been driving in the same vehicle as Officer Diehl. Defendant HULBERT later claimed he lost sight of Officer Diehl and assumed that Officer Diehl had been run over by the red Dodge. Meanwhile, Officer Diehl had moved to a position of safety, and that the red Dodge had veered away from Officer Diehl's prior position. Defendant HULBERT fired 16 rounds into the driver's side of the red Dodge when no one was in immediate danger from the red Dodge.

15. Defendant CHP officers have all been trained to not shoot at a moving vehicle when the danger posed by the moving vehicle can be removed by the officer simply changing their location, such as getting out of the way of the vehicle. Defendant CHP officers have all been trained to maintain situational awareness, including being aware of their surroundings and aware of the locations of other officers, as well as other people who could be in danger. Defendants have all been trained to give a warning they would shoot when feasible to do so. Defendants HENDERSON, SAPUTA, and HULBERT all violated their training and the Fourth and Fourteenth Amendments to the U.S. Constitution when they fired on the red Dodge without recognizing the reality both that Officer Diehl had moved to a position of safety, and that the red Dodge had veered away from the position Officer Diehl had been in. No one was in danger of being run over by the red Dodge. No one gave any warning they would fire their weapons.

16. At all times, Plaintiff COLOMBO was visible and present in the front passenger seat of the red Dodge. She was shot by Defendants three times, including being shot in her abdomen. Defendants HENDERSON, HULBERT and SAPUTA fired over 40 rounds of gunshots into the red Dodge. Mr. SALGADO was shot at least 18 times by Defendants.

17. The shooting and killing of Mr. SALGADO and the shooting of Ms. COLOMBO described herein was brutal, malicious, and done without just provocation or cause, and proximately caused Plaintiffs' injuries and resulting damages.

## IV. DAMAGES

18. Plaintiffs were physically, mentally, emotionally and financially injured and damaged as a proximate result of Decedent ERIK SALGADO's wrongful death, including, but not limited to, the loss of decedent's familial relationships, comfort, protection, companionship, love, affection, solace, and moral support. In addition to these damages, Plaintiffs are entitled to recover for the reasonable value of funeral and burial expenses, pursuant to C.C.P. Sections 377.60 and 377.61.

19. Minor Plaintiff L.S. is entitled to recover wrongful death damages pursuant to C.C.P. Sections 377.60 and 377.61 and Probate Code Section 6402(b).

20. Plaintiff COLOMBO suffered severe physical injuries caused by being shot by Defendants and has been hospitalized to recover from the shooting. Plaintiff COLOMBO suffered severe pain and suffering caused by being shot by defendants. Plaintiff COLOMBO also suffered emotional distress, pain and suffering damages by being shot by Defendants, and has incurred special damages including medical bills and the costs of medical treatment for her injuries.

21. Pursuant to C.C.P. Sections 377.30, 377.32, and 377.34, plaintiff L.S. as Decedent's successor-in-interest is further entitled to recover for damages incurred by decedent before he died as the result of being assaulted and battered by excessive force, damages for decedent's loss life and loss of enjoyment of life in violation of the Fourth Amendment to the United States Constitution causing Decedent's death by excessive force under section 1983, and to any penalties or punitive damages to which decedent would have been entitled to recover, had he lived, and are further entitled to recover for Decedent's own pain and suffering and emotional distress incurred as a consequence of Defendants' section 1983 violations, preceding Decedent's death.

22. The conduct of the defendant officers was malicious, wanton, and oppressive. Plaintiffs are therefore entitled to an award of punitive damages against said individual defendants.

23. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights, and the rights of decedent, under the law. Plaintiffs are therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code section 1988.

FIRST CAUSE OF ACTION
(42 U.S.C. Section 1983)
(Minor Plaintiff L.S. as successor-in-interest to Decedent ERIK SALGADO and BRIANNA COLOMBO Against Defendant Officers HENDERSON, SAPUTA, HULBERT, and DOES 4-25)

24. Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 23 of this Complaint.

25. In doing the acts complained of herein, Defendants HENDERSON, SAPUTA, HULBERT, and DOES 4-25, inclusive, and/or each of them, acted under color of law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

25. Said rights are substantive guarantees under the First, Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

SECOND CAUSE OF ACTION
(14th Amendment Substantive Due Process- Right to Familial Relationship)
(Plaintiffs L.S. individually and FELINA RAMIREZ, Against Defendants HENDERSON, SAPUTA, HULBERT, and DOES 4-25)

26. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 25 of this Complaint.

27. Defendants HENDERSON, SAPUTA, HULBERT, and DOES 4-25acting under color of law, and without due process of law deprived Plaintiffs of their right to a familial relationship with Decedent by use of unreasonable, unjustified deadly force and violence, causing injuries which resulted in decedent’s death, all without provocation, in violation of the Fourteenth Amendment to the United States Constitution. Defendants HENDERSON, SAPUTA, HULBERT, and DOES 4-25 acted with an intent to harm Decedent unrelated to legitimate law enforcement purposes in killing Decedent.

28. As a proximate result of defendants' conduct, Plaintiffs suffered damages as hereinafter set forth.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

THIRD CAUSE OF ACTION
(C.C.P. Section 377.60 and 377.61)
(Wrongful Death – Negligence
Minor Plaintiff L.S. individually, against Defendants HENDERSON, SAPUTA, HULBERT, and DOES 4-25)

29. Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 28 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

30. Defendants HENDERSON, SAPUTA, HULBERT, and DOES 4-25 shot and killed Decedent despite the absence of a threat to any defendant officers or any other person at the moment of the shooting. Because Decedent died with issue, Minor Plaintiff L.S. is his successor-in-interest with standing to sue for his wrongful death under California state law. Furthermore, Defendant HENDERSON was the incident supervisor, the most senior officer at the scene, and directed all officers at the scene, including co-defendants SAPUTA and HULBERT. All defendants owed Decedent a duty to act reasonably in their tactical actions and conduct preceding the subject-incident, and Defendant HENDERSON, as the senior officer and incident supervisor, owed a duty to act reasonably in that capacity as well. Defendant HENDERSON directed the use of lethal force when no threat existed, or if any threat had existed, had ended. Had Defendant HENDERSON acted reasonably as the incident supervisor, he would have prevented Defendant HULBERT, SAPUTA, and his own rash and unreasonable use of lethal force.

31. As an actual and proximate result of said Defendants' negligence, and the death of Decedent, Plaintiffs sustained a pecuniary loss resulting from the loss of comfort, society, attention, services, and support of Decedent, in an amount according to proof of trial.

32. As a further actual and proximate result of said Defendant' negligence, Plaintiffs incurred funeral and burial expenses, in an amount according to proof at trial.

33. Pursuant to California C.C.P. Sections 377.60 and 377.61, Plaintiffs brought this action, and claims damages from said Defendants for the wrongful death of Decedent, and the resulting injuries and damages.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Violation of California Civil Code Section 52.1
Minor Plaintiff L.S. as successor in interest to Decedent, against Defendants HENDERSON, SAPUTA, HULBERT, and DOES 4-25)

34. Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 33 of this Complaint.

35. Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation, and coercion, with the Decedent's peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code § 52.1.

36. As a direct and proximate result of Defendants' violation of Civil Code § 52.1, Decedent suffered violations of his constitutional rights, and suffered damages as set forth herein.

37. Plaintiffs are entitled to injunctive relief and an award of their reasonable attorney's fees pursuant to Civil Code § 52.1(h).

38. Plaintiffs are entitled to treble damages, but in no case less than $4,000.00 and an award of reasonable attorney's fees pursuant to Civil Code § 52(a).

39. Under the provisions of California Civil Code §52(b), defendants are liable for punitive damages for each violation of Civil Code §52.1, reasonable attorney's fees and an additional $25,000.00 penalty per violation.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FIFTH CAUSE OF ACTION
(Wrongful Death-Battery)
Minor Plaintiff L.S. against Defendant HENDERSON, SAPUTA, HULBERT, and DOES 4-25)

40. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 39 of this Complaint.

41. Defendants HENDERSON, SAPUTA, HULBERT, and DOES 4-25, while working in their capacity as police officers for the State of California and acting within the course and scope of their duties, intentionally shot, and killed Decedent without a lawful basis.

42. As a result of the actions of the Defendant, Decedent suffered physical injuries and was killed. Defendants HENDERSON, SAPUTA, HULBERT, and DOES 4-25 did not have legal justification for using force against Decedent, and Defendants' use of force while carrying out their police officer duties was an unreasonable use of force.

43. As a direct and proximate result of Defendants' assault and battery of Decedent sustained injuries and damages and are entitled to relief as set forth above.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## V. JURY DEMAND

44. Plaintiffs hereby demand a jury trial in this action.

## VI. PRAYER

WHEREFORE, Plaintiff prays for relief, as follows:

1. For general damages in a sum according to proof;
2. For special damages in a sum according to proof;
3. For punitive damages in a sum according to proof;
4. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988 and Civil Code section 52.1;
5. For the costs of suit herein incurred; and
6. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: June 30, 2021

**LAW OFFICES OF JOHN L. BURRIS**

/s/*Benjamin Nisenbaum*____
Ben Nisenbaum
Attorney for Plaintiffs