1
Rob Bonta
Acting Attorney General of California
2
Jeffrey R. Vincent
Supervising Deputy Attorney General
3
Daniel B. Alweiss
Deputy Attorney General
4
State Bar No. 191560
1515 Clay Street, 20th Floor
5
P.O. Box 70550
Oakland, CA  94612-0550
6
  Telephone:  (510) 879-0005
  Facsimile:  (510) 622-2270
7
  E-mail: Daniel.Alweiss@doj.ca.gov
*Attorneys for Defendants Sgt. Richard Henderson,*
8
*Officer Eric Hulbert, and Officer Donald Saputa*

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13

| | |
|---|---|
| 14  **L.S. individually and as Successor-in Interest to Decedent ERIK SALGADO by and through her guardian ad litem Michael Colombo; BRIANNA COLOMBO and FELINA RAMIREZ, Mother of decedent,** | Case No. 3:20-cv-04637-VC |
| | **NOTICE OF MOTION AND MOTION TO QUASH RECORDS SUBPOENAS; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT; SUPPORTING DECLARATION** |
| Plaintiff, | [Fed. R. Civ. Proc. 45 (d)(3); Loc. Rule 7-2.] |
| v. | Date:   September 9, 2021 Time:  2:00 p.m. |
| **RICHARD HENDERSON, et al.; DOES 2-25, inclusive,** | Courtroom: 4, 17th Floor Judge: Hon. Vince Chhabria |
| Defendants. | Trial Date:   March 28, 2022 FAC Filed:   September 3, 2020 |

23

24   TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

25         PLEASE TAKE NOTICE that on September 9, at 2:00 p.m., before the Honorable Vince

26   Chhabria, United States District Court Judge in Courtroom No. 4, of the above-entitled court,

27   located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Sgt. Richard

28   Henderson (Defendant), will, and hereby does, move for an order quashing records subpoenas

                                      1

1  from Plaintiffs L.S. individually and as Successor-in Interest to Decedent ERIK SALGADO by

2  and through her guardian ad litem Michael Colombo; BRIANNA COLOMBO and FELINA

3  RAMIREZ, Mother of Decedent (Plaintiffs) served on the Veterans Administration - Long Beach

4  and the Long Beach Police Department, pursuant to Federal Rules of Civil Procedure

5  45(d)(3)(A)(iii).  This motion is on the grounds that:

6       1.  Plaintiff seeks disclosure of information protected by the Privacy Act of 1974 and

7  HIPAA, and an order quashing such subpoena is warranted under Federal Rules of Civil

8  Procedure 45(d)(3)(A)(iii).

9       Pursuant to Local Rule 7-2(b)(3), Defendant, as the moving party, seeks relief from this

10  Court in the form of an order quashing the above subpoenas, as to his medical and mental health

11  records, and third-party witness statement in a police report about his health.

12       Defendant's motion is based upon this Notice of Motion and Motion, Memorandum of

13  Points and Authorities, and supporting declaration with exhibits, all papers and pleadings on file

14  in this matter, any supporting request for judicial notice, and such oral and written material as

15  may be presented at the hearing of this motion or any other additional evidence as may be

16  considered at the hearing.

17       Accordingly, Defendant prays that this motion be granted and other relief as this court

18  deems proper.

19                    **STATEMENT OF THE ISSUES**

20       Pursuant to Local Rule 7-4(a)(3), the main issue is:

21       1.   Do Plaintiffs' subpoenas seek disclosure of information protected by the Privacy Act

22  of 1974 and HIPAA?

23                         **INTRODUCTION**

24       Plaintiffs subpoenas seek disclosure of information protected by the Privacy Act of 1974

25  and HIPAA because they seek all of Defendant's medical and mental health records from 2001 to

26  the current, and his third-party witness statement in a police report about his personal health

27  condition.

28  ///

2

These are personal records, and they may not be released absent a court order 5 U.S.C. § 552a(b)(11).  Plaintiffs had made no effort to show any good cause and obtain such an order.

## PROCEDURAL FACTS

On Wednesday, July 21, 2021 at 2:05 pm, Plaintiffs' counsel emailed a link to obtain the subpoenas to VA-Long Beach and the Long Beach Police Department.  (Ex. A; Alweiss Decl. at 7:22-24.)  In this email, Plaintiffs' counsel conducted a "pre-emptive" meet and confer related to Defendant's health condition.  (Alweiss Decl. at 7:24-25.)

This email contained 17 links to view the subpoenas, but none of these documents were attached as a PDF file.  (Alweiss Decl. at 7:26-27.)  Defendant's counsel and his secretary could could view these documents, but could not download or print them.  (Alweiss Decl. at 7:27-28.)  Counsel's Outlook email locked up each time he attempted to access the documents by clicking the link. (Alweiss Decl. at 7:28; 8:1.)  The next day, counsel's office was able to download and print these documents through a third-party account with Google.  (Alweiss Decl. at 8:1-2.)  These subpoenas were physically received in counsel's office on Monday, July 26. (Alweiss Decl. at 8:2-3.)

The VA-Long Beach subpoena required production on Monday August 2, and the Long Beach Police Department subpoena for August 4.  (Exs. B & C; Alweiss Decl. at 8:4-5.)  These subpoenas were not timely served on defense counsel.  (Alweiss Decl. at 8:5-6.)

On Tuesday, July 27, counsel emailed and telephoned Plaintiffs' counsel as a meet and confer for these subpoenas.  (Alweiss Decl. at 8:7-8.)  On Wednesday, July 28, the parties met and conferred as to these subpoenas.  (Alweiss Decl. at 8:8-9.)  Plaintiffs' counsel expressly indicated he did not know if these subpoenas met and complied with HIPPA and applicable privacy laws. (Alweiss Decl. at 8:9-10.)  Plaintiffs' counsel agreed to limit the VA subpoena from 2010 to the current, and to be under a protective order. (Alweiss Decl. at 8:10-11.)

Later that day, counsel emailed his analysis of Plaintiffs' authority for the scope of these subpoenas, and Plaintiffs' counsel rejected it.  (Ex. E; Alweiss Decl. at 8:12-13.)  On Thursday, July 29, counsel emailed another meet and confer letter to Plaintiffs' counsel expressly asserting the Privacy Act of 1974, and requested Plaintiffs withdraw their subpoenas, and bring a noticed

3

1    motion to obtain a court order permitting such disclosures.  (Ex. F; Alweiss Decl. at 8:13-16.)

2    Plaintiffs rejected that idea, and requested Defendant bring this motion to quash. (Alweiss Decl.

3    at 8:16-17.)

4                                 **ANALYSIS**

5    **I.  THIS MOTION IS PROPERLY BEFORE THIS COURT**

6        Defendant seeks to quash Plaintiffs' subpoenas because the information sought under them

7    is protected under the Privacy Act of 1974 and HIPAA.  Fed. R. Civ. P. 45(d)(3)(A)(iii); 5 U.S.C.

8    § 552a(b); 45 C.F.R. § 164.502.  Plaintiffs served records subpoenas seeking personal

9    information related to Defendant, which is protected under the Privacy Act of 1974 and HIPAA.

10        The parties have met and conferred under Local Rule 37-1, both via email and live

11    telephone conversation.  Defendant seeks an order quashing such subpoenas, and this matter is

12    properly before this Court.

13    **II.  DEFENDANT'S RECORDS MAY NOT BE DISCOVERED BY PLAINTIFFS' SUBPOENAS**

14        **WITHOUT HIS CONSENT.**

15        Defendant's records may not be discovered by Plaintiffs' subpoenas without his consent.

16    Under 5 U.S.C. section 552a(b), "[n]o agency shall disclose any record which is contained in a

17    system of records by any means of communication to any person, or to another agency, except

18    pursuant to a written request by, or with the prior written consent of, the individual to whom the

19    record pertains."

20        The only applicable exception to the "no disclosure without consent rule" would be if this

21    court ordered such a disclosure.  5 U.S.C. § 552a(b)(11).  However, a subpoena issued by

22    plaintiffs' counsel is not a court order within the meaning of the exception, because it is not

23    "specially approved" by a judge.  *Doe v. DiGenova*, 779 F.2d 74, 77-85 (D.C. Cir. 1985); see

24    also, *Ricoma v. Standard Fire Ins. Co*., No. 5:12-CV-18, 2013 WL 1164499, at *1 n.2 (E.D.N.C.

25    Mar. 20, 2013); *Hoffman v. Astrue*, No. 3:10-CV-00214, 2011 WL 195617, at *4 (W.D. Ky. Jan.

26    18, 2011); U.S. Dept. of Justice, *Overview of the Privacy Act of 1974* (2020 ed.), at 121.

27    ///

28    ///

4

Not. Mot. & Motion to Quash Subpoenas; Mem. of Ps & As in Support; Decl. (Case No.: 3:20-cv-04637-VC)

1      In *Doe v. DiGenova*, a veteran challenged the VA's authority to release his medical records

2  in response to a subpoena.  The court was clear, "subpoenas—grand jury or otherwise—do not

3  qualify as 'order[s] of a court of competent jurisdiction' under 5 U.S.C. § 552a(b)(11), unless

4  they are specifically approved by a court."  *Doe v. DiGenova*, 779 F.2d at 85.

5      Additionally, under HIPAA, a covered entity "may not use or disclose protected health

6  information," except as expressly permitted under that Act.  45 C.F.R. § 164.502(a).  As

7  applicable in this case, Plaintiffs would need to provide to the record provider sufficient notice of

8  Defendant's objection to such records being disclosed, <u>prior to the date of production</u>.  45 C.F.R.

9  § 164.512(e)(1).

10     Here, Plaintiffs' counsel has issued two records subpoenas seeking all medical and mental

11  health records for Defendant from 2001 to the current, from the Veterans Administration-Long

12  Beach, and a police report in Long Beach where Defendant gave a witness statement which

13  disclosed his personal health information.  It is indisputable that such records fall within the term

14  "record" for purposes of the Privacy Act, and to the extent are records for healthcare treatment at

15  the VA.  5 U.S.C. § 552a(a)(4); 45 C.F.R. § 160.103.

16     Upon receiving notice of such records, Defendant objected and did not consent.  Defendant

17  requested Plaintiffs withdraw their subpoenas.  Plaintiffs' counsel refused and requested

18  Defendant bring a motion to quash.  There is no good faith or valid basis for Plaintiffs to believe

19  they may obtain Defendant's records, over his objections, and without his consent, and in

20  violation of the above authorities.  These records fall squarely within the protections of the

21  "Privacy Act of 1974," and it is <u>mandatory</u> that "no agency shall disclose any record," which is

22  subject to the Act.  Likewise, HIPAAA clearly applies to Defendant's VA healthcare records.

23     A clear purpose of the Act is to require litigants to first go to the judge, as a gate-keeper, on

24  such matters.  Under HIPAA, Plaintiffs are required to tell the VA that Defendant objects to his

25  records being disclosed.  The burden to show good cause and obtain the required order is on the

26  subpoenaing party in bringing a new motion, and not the party asserting their privacy rights.

27  ///

28  ///

5

Not. Mot. & Motion to Quash Subpoenas; Mem. of Ps & As in Support; Decl. (Case No.: 3:20-cv-04637-VC)

1

**CONCLUSION**

2

This motion should be granted and the subpoenas quashed.  Plaintiffs intentionally served

their subpoenas on short notice and in clear violation of the Privacy Act of 1974, in an effort to

3

obtain sensitive personal medical and mental health records of Defendant.

4

Dated:  July 30, 2021

5

6

Respectfully Submitted,
ROB BONTA
Acting Attorney General of California
JEFFREY R. VINCENT
Supervising Deputy Attorney General

7

*/s/ Daniel B. Alweiss*

8

9

DANIEL B. ALWEISS
Deputy Attorney General

10

*Attorneys for Defendants Sgt. Richard
Henderson, Officer Eric Hulbert, and
Officer Donald Saputa*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

**DECLARATION OF DANIEL ALWEISS SUPPORTING MOTION TO QUASH**

I, Daniel B. Alweiss, declare as follows:

1.     I am an attorney licensed to practice law before all courts in the State of California.  I am a Deputy Attorney General with the Office of the Attorney General for the State of California, attorneys of record for Defendant CHP Sgt. Richard Henderson.  The following facts are based on my personal knowledge and review of and familiarity with this file, except as to those matters stated on information and belief.  If called as a witness, I could and would testify competently thereto.

2.     Attached as **Exhibit A** is an accurate copy of Plaintiffs' counsel's email of July 21, 2021,

3.     Attached as **Exhibit B** is an accurate copy of Plaintiffs' Subpoena to Veterans Administration - Long Beach, for Defendant's medical and mental health records from 2001 to the present.

3.     Attached as **Exhibit C** is an accurate copy of Plaintiffs' Subpoena to Long Beach Police Department.

4.     Attached as **Exhibit D** is an accurate copy of defense counsel's email to start the meet and confer process on July 27, and plaintiff's related response.

5.     Attached as **Exhibit E** is an accurate copy of defense counsel's email as part of the meet and confer process on July 28, and plaintiff's related response.

6.     Attached as **Exhibit F** is an accurate copy of defense counsel's email as part of the meet and confer process on July 29, and plaintiff's related response.

7.     On Wednesday, July 21, 2021 at 2:05 pm, Plaintiffs' counsel emailed a link to obtain the subpoenas to VA-Long Beach and the Long Beach Police Department.  In this email, Plaintiffs' counsel conducted a "pre-emptive" meet and confer related to Defendant's health condition.

8.     This email contained 17 links to view the subpoenas, but none of these documents were attached as a PDF file.  Defendant's counsel and his secretary could could view these documents, but could not download or print them.  Counsel's Outlook email locked up each time

7

1  he attempted to access the documents by clicking the link.  The next day, counsel's office was
2  able to download and print these documents through a third-party account with Google.  These
3  subpoenas were physically received in counsel's office on Monday, July 26.

4       9.   The VA-Long Beach subpoena required production on Monday August 2, and the
5  Long Beach Police Department subpoena for August 4.  These subpoenas were not timely served
6  on defense counsel.

7       10.  On Tuesday, July 27, counsel emailed and telephoned Plaintiffs' counsel as a meet
8  and confer for these subpoenas.  On Wednesday, July 28, the parties met and conferred as to these
9  subpoenas.  Plaintiffs' counsel expressly indicated he did not know if these subpoenas met and
10  complied with HIPPA and applicable privacy laws.  Plaintiffs' counsel agreed to limit the VA
11  subpoena from 2010 to the current, and to be under a protective order.

12       11.  Later that day, counsel emailed his analysis of Plaintiffs' authority for the scope of
13  these subpoenas, and Plaintiffs' counsel rejected it.  On Thursday, July 29, counsel emailed
14  another meet and confer letter to Plaintiffs' counsel expressly asserting the Privacy Act of 1974,
15  and requested Plaintiffs withdraw their subpoenas, and bring a noticed motion to obtain a court
16  order permitting such disclosures.  Plaintiffs rejected that idea, and requested Defendant bring this
17  motion to quash.

18       12.  I met and conferred with plaintiffs' counsel on the issues which are the subject of this
19  motion, to attempt to resolve this matter prior to filing.

20      I declare under penalty of perjury under the laws of the State of California that the
21  foregoing is true and correct, and I have executed this document at Oakland, California.
22  Dated:  July 30, 2021

23                 /s/ ***DANIEL B. ALWEISS***
24                 DANIEL B. ALWEISS
                Deputy Attorney General
25
26
27
28

8

Exhibit A

## Daniel B. Alweiss

| | |
|---|---|
| **From:** | Ben Nisenbaum <bnisenbaum@gmail.com> |
| **Sent:** | Wednesday, July 21, 2021 2:05 PM |
| **To:** | Daniel B. Alweiss |
| **Cc:** | jbcofc; Jim Chanin; John Burris |
| **Subject:** | Salgado deposition notices and subpoenas, original to follow in mail, and other matters |
| **Attachments:** | Henderson Pages from Michele Rice OIS 2017-006 - Index.pdf |

Dan,

Please find attached the notices of depositions for the defendants, CHP officers/pmks, and OPD pmks, and subpoenas.

Since you haven't responded to my multiple emails seeking deposition dates from you for the CHP witnesses and defendants, I have no choice but to simply set them. As you can see, I have set them for the weeks of August 16th and 23rd.

I can work out the witness fees if your office insists on that, but that is not the case for the Defendants I don't believe.

Also, while you indicated you might not accept service for the non-defendant CHP witnesses, I would point out that you designated yourself as their contact in your Rule 26 initial disclosures, so service on you is proper as to them.

Finally, we have learned that your client, Rich Henderson, has told police investigators in the Michele Rice incident that he suffers from a disorder, apparently PTSD, from his time in the service where his comrades were killed. We are going to subpoena the VA records for Henderson. These are relevant and discoverable and may be admissible at trial (see Tan Lam v. City of Los Banos, 976 F.3d 986, 1006-07 (9th Circuit, 2020). I am attaching for your benefit the redacted Long Beach Police Department report from the interview of your client in the Michele Rice case, so you understand the basis of the request, and the apparent admission. We will also subpoena the unredacted report, but I think in all fairness the odds are the relevant redaction was "PTSD", judging from the context.

I will send the subpoenas in the mail to you as well, to ensure your receipt. Please confirm that you will accept for CHP witnesses.

I will call you shortly as well.

Ben

 _ACFrOgB4AxDlHK3VZQoVbAUulFwFs_GsTiRUoMCQG9crpoQ...

 _ACFrOgBfZrEelgJfVumouENW7xTUXnc2aoD5MP3aZglokay...

 _ACFrOgBMVK6u8NLA92J9K6aJ6Jj8Pp28tfaQZ8ex5U0gP-k...

1

_ACFrOgBsdI1a2qICSxH0hpxu0XjqjPULTAUSjECtyqeVJka...

_ACFrOgBu7tvQqrGwcZ7thAiFVL9eGMfFFVkaECLcyrW1w9B...

_ACFrOgBWUggHOk1tMEZLTax7C8YVb1z7VxPsZpw9aEbgMIX...

_ACFrOgC3lfZl8tv9oV8kQZyO8v14OqwiUzaz0X3L1lZJT8B...

_ACFrOgC6if8gni6lEAL5bWy-bKDHoXC7E2SnhPYL_1fFriL...

_ACFrOgCHv-jRDR5u-RX9cvdXZG_5uUwG6G3xAcwyIu9TZDI...

_ACFrOgCILHttpEBC8paBeK8iUrpRrpsQBs4sOqHjlnLC-zb...

_ACFrOgCwADSbhz1ey1xdSOhlyO5yyUHRATSSS8ph9GjDRnf...

_ACFrOgD7bfoWALSMOc0HmbvZSk_dijiXkbOPRoCH1--C0WK...

_ACFrOgDB9NTpcxS3hiaWTesdrp_mJGdsH_teRzqP89H7HuT...

_ACFrOgDedmYQQpuPRfqSvQDXV3qSLrD3UuxYyTdLqfTefSY...

_ACFrOgDHsJNwcNs4w0ut8BMF14rJttdia5TkcVwqyK9_GGS...

_Salgado deps notice CHP.docx

_Salgado deps notice Oakland.docx

Exhibit B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| L.S., et al. | ) |
| _Plaintiff_ | ) |
| v. | )   Civil Action No.   3:20-cv-04637 VC |
| RICHARD HENDERSON, ERIC HULBERT, DONALD SAPUTA and DOES 4-25, inclusive, | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:       VA Long Beach Healthcare System
              5901 East 7th Street, Long Beach, CA 90822

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Law Offices of John L. Burris<br>7677 Oakport Street, Suite 1120<br>Oakland, CA 94621 | Date and Time:<br><br>08/02/2021 9:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     07/21/2021

| CLERK OF COURT | | |
|---|---|---|
| | OR | _(signature)_ |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Plaintiffs L.S., et al.
_____ , who issues or requests this subpoena, are:

Benjamin Nisenbaum; 7677 Oakport Street, Suite 1120, Oakland, CA 94621; bnisenbaum@gmail.com; (510) 839-5200

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

### RICHARD J. HENDERSON (DOB: May 28, 1981)

1.   Any and all documents, computer- or tape-recorded materials, and writings that relate or refer to the physical, mental, psychological, psychiatric, emotional, or behavioral condition, diagnosis, treatment, and/or examination of **RICHARD HENDERSON** from January 1, 2001, through the present, including but not limited to any records, bills, notes, memoranda, insurance forms, intake forms, questionnaires, treatment plans, prescriptions issued, tests, test results, reports, diagnoses, and appraisals of patient status compiled, created, written, maintained or otherwise involving any of your employees, agents, or treating professionals.

2.   Any and all documents, computer- or tape-recorded materials, and writings that relate or refer to any communication (whether written, oral, or by other means) with **RICHARD HENDERSON** from January 1, 2001, through the present.

3.   Any and all documents, computer- or tape-recorded materials, and writings that relate or refer to any communication (whether written, oral, or by any other means) with any individual other than **RICHARD HENDERSON** from January 1, 2001, through the present, the subject of which is the physical, mental, psychological, psychiatric, emotional, or behavioral condition, diagnosis, treatment, and/or examination of **RICHARD HENDERSON.**

Exhibit C

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

|   |   |
|---|---|
| L.S., et al. | ) |
| *Plaintiff* | ) |
| v. | ) |
| RICHARD HENDERSON, ERIC HULBERT, DONALD SAPUTA and DOES 4-25, inclusive, | ) |
| *Defendant* | ) |

Civil Action No. 3:20-cv-04637 VC

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Long Beach Police Department, ATTN: Records Division Administrator
400 West Broadway, Long Beach, CA 90802

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Law Offices of John L. Burris<br>7677 Oakport Street, Suite 1120<br>Oakland, CA 94621 | Date and Time:<br><br>08/04/2021 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|   |   |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 07/21/2021

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiffs L.S., et al.
_____ , who issues or requests this subpoena, are:

Benjamin Nisenbaum; 7677 Oakport Street, Suite 1120, Oakland, CA 94621; bnisenbaum@gmail.com; (510) 839-5200

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:20-cv-04637 VC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

Officer Involved Shooting [OIS 17-006]
June 7, 2017 at 2356
Studebaker Rd, Long Beach, CA

Any and all UNREDACTED documents that relate to or refer to the above-mentioned matter, including but not limited to:

1. Any and all reports, notes, handwritten notes, records, tapes, memorandums, messages, tape recordings, transcripts or recordings of interviews, reports and statements taken from witnesses regarding the incident, and any and all documents prepared, investigative reports, body-mounted video footage, dashboard-mounted video footage, surveillance videos, doorbell videos, photographs, autopsy reports.

2. All materials compiled and presented for review to the district attorney or to any person or body charged with determining whether to file criminal charges against an officer in connection with an incident, or whether the officer's action was consistent with law and agency policy for purposes of discipline or administrative action, or what discipline to impose or corrective action to take; documents setting forth findings or recommended findings; and copies of disciplinary records relating to the incident, including any letters of intent to impose discipline, any documents reflecting modifications of discipline due to the Skelly or grievance process, and letters indicating final imposition of discipline or other documentation reflecting implementation of corrective action.

3. Any and all unredacted reports, transcriptions, records, and notes of RICHARD HENDERSON's statement(s) to police regarding the above-mentioned incident. This includes, but is not limited to, an unredacted copy of the following record:

DR No 17-33750 Supplement No 85

**17-33750**    Supplement No 0085

**LONG BEACH POLICE DEPARTMENT**



400 WEST BROADWAY

LONG BEACH, CA 90802

Phone
562 570-7381 RECORDS
Fax
562 570-7080 FAX

Reported Date
08/10/2017
Primary Offense
OFFINVOLVE
Officer
HUBERT, TERYL A

**Administrative Information**

| Agency | DR No | Supplement No | Reported Date | Reported Time |
|---|---|---|---|---|
| LONG BEACH POLICE DEPARTMENT | 17-33750 | 0085 | 08/10/2017 | 09:22 |

| CAD Call No | Rpt Typ | Primary Offense | | | |
|---|---|---|---|---|---|
| 171581889 | FOLLOW-UP REPORT | OFFICER INVOLVED SHOOTING | | | |

| Location | | | | | City |
|---|---|---|---|---|---|
| STUDEBAKER RD | | | | | LONG BEACH |

| ZIP Code | Rep Dist | Area | Beat | From Date | From Time |
|---|---|---|---|---|---|
| 90808 | 664 | 02 | 17 | 06/07/2017 | 23:56 |

| Officer | | | Assignment | |
|---|---|---|---|---|
| 5577/HUBERT,TERYL A | | | INVEST/GVC/CAP/HOMICIDE | |

| 2nd Officer | Assignment | | Entered by |
|---|---|---|---|
| ROBLES,THOMAS MICHAEL | PATROL/SOUTH/CFS/W1 | | 5577 |

| Assignment | Confidential | RMS Transfer | Prop Trans Stat |
|---|---|---|---|
| INVEST/GVC/CAP/HOMICIDE | OFFICER INVOLVED SHOOTING | Successful | Successful |

| Approving Officer | Approval Date | Approval Time |
|---|---|---|
| 8332 | 09/01/2017 | 11:20:49 |

**WITNESS 1:**

| Involvement | Invl No | Type | Name |
|---|---|---|---|
| WITNESS | 1 | Individual | ████████ |



████ ████ ██ ██ ███
08/10/2017

**Narrative**

**Interview:**

On 6/8/17 at approximately 0456 hours, I, Detective Hubert along with my partner Detective S. Lasch spoke with ████████ regarding an Officer Involved Shooting that occurred the night prior at ████ Studebaker in the City of Long Beach. ████████ is a CHP Officer and it was his girlfriend, Michele Rice, whom was involved in the shooting with Long Beach Police Officers. Rice was shot by police and did not survive. The interview took place in the LBPD MEOC. Also present in the interview was Deputy District Attorney David Reinert, District Attorney Senior Investigator S. Florez as well as CHP Peer Officer Scott Wall. The interview was recorded and the following is a summary of that interview:

████████ told us that he and his girlfriend, Michele Rice, had been dating for a little less than 2 years. They had known each other longer but had been living together for approximately 1 year and 7 months. On the night of 6/7/17, they had shared dinner together but later began to argue over when ████████ son was going to come for a visit. Rice had never met ████████ son and this was a sensitive issue for Rice. On the night of 6/7/17, Rice overheard a phone conversation between ████████ and his father regarding this visit from ████ son. In that conversation, ████████ was telling his father that he was going to wait until July to bring his son down for a visit.

This upset Rice because she believed the visit was going to be earlier than July. ████████ went on to say that he was scheduled to serve a search warrant at 0500 hours on 6/8/17 in Compton. Because he had to get up at 0230 hours to make the 0400 briefing, he told Rice that he did not have time to argue with her at the time. ████████ went into their bedroom and shut the door to go to sleep. Rice remained up and was "banging around the house". Rice came into the bedroom 2-3 times slamming drawers. ████████ explained to Rice that he had

| Report Officer | Passed At | |
|---|---|---|
| 5577/HUBERT, TERYL A | 10/21/2017  09:48 | Page 1 of 4 |

0048

17-33750   Supplement No. 0085

## LONG BEACH POLICE DEPARTMENT

**Narrative**

serious things to do tomorrow and he did not have time to argue about this right now.

Rice was mad and broke up with ████████ which he stated she has done in the past a couple of times when she was angry. ████████ explained that Rice has depression because she had lost custody of her two kids about 2 years ago. ████████ went on to say that Rice left the house and went to buy a pack of cigarettes. This made ████████ mad as he had gotten her to quit smoking 6 months ago. ████████ stated that Rice came back from buying the cigarettes and continued to bang around the house. ████████ told Rice if she was going to act like this she needed to leave. Rice was extremely upset.

Rice took a credit card that they both shared and a backpack and left. ████████ and Rice began to text and call each other. They continued to argue on the phone and through text messages. ████████ was worried about her being gone due to her depression. ████████ was worried about Rice being out late on foot because of a prior incident where Rice was jogging on the bike path and a male subject exposed himself to her. ████████ pleaded with Rice to come back to the house. Rice told ████████ she was not coming back "just like some of your dead friends". ████████ told us he suffers from ████ from his time in the service where some of his comrades were killed. ████████ told us he "went off on her" and called her a "horrible bitch".

████████ started to cry saying that Rice hung up on him. ████████ was able to go online and see if there were any charges to their credit card. ████████ saw that there was a $20 charge at Dick's Palm Tree Liquor. ████████ knew she had bought hard alcohol adding that she gets mean when she drinks hard alcohol. ████████ added she has not had hard alcohol for the last 9 months to a year. ████████ recalled a really big argument they had 9 months ago when they broke up. ████████ told us on this occasion he was sober and had driven Rice and his work buddy, ████, to Cowboy Country bar where Rice and ████ did Jack Daniel shots. Rice became very nasty and they argued. Rice called ████████ every name under the sun and Rice later apologized saying she would never drink hard alcohol again. ████████ added that none of his arguments with Rice have ever been physical.

████████ told us that on the night of the incident after he had seen the $20 charge at the liquor store, he asked Rice on the phone if she was drunk. Rice told him she was as ████████ could hear her "chugging" the drink as they spoke. ████████ told Rice to come home so she would not be arrested or raped. Rice told ████████ she could take care of herself because she had taken something (referring to a gun). ████████ told us it was at this point he realized that she had taken her Glock 22 handgun with her. ████████ added that the gun used to belong to him but he had transferred it to her at Ammo Brothers on Alondra approximately 6 months ago. ████████ told us Rice wanted to be a cop and she was an applicant with the Long Beach Police Department and had recently completed her psyche test on the 21st. ████████ continued to cry saying Rice had applied for her carrying a concealed weapon permit. ████████ added he would have never given her a gun if he knew she was going to do something like this.

████████ pleaded with Rice to come home since she was drunk and armed with a gun adding she would never get hired if she got caught. ████████ told her to come home and he did not want to call the police. Rice asked ████████ what if she put the gun in her mouth right now? ████████ pleaded with her to come home and bring the gun home. ████████ did not want her to hurt herself, or hurt an officer or have an officer have to shoot her. Rice hung up on ████████. ████████ tried to call back. At some point Rice answered and told ████████ that she wanted to play a little game with him. ████████ began talking about what a good shot Rice was and how they used to shoot often together. ████████ stated he paid for Rice to take a CCW training course and she loved shooting. ████████ told us that when Rice spoke about wanting to play a game with him he asked her what she was talking about. Rice told ████████ she was going to kill him. ████████ went on to say that he was unsure of her exact statement but it was something to the effect of "I am going to give you a reason to kill me", or

something similar.

███████ continued by saying that Rice knew that ███████ does not go anywhere unless he is armed. Based on Rice being armed and drunk, ███████ made a decision to leave his house to avoid confrontation. ███████ truck was parked in front of his house facing southbound on the service road of Studebaker. As ███████ drove southbound on the service road, he saw Rice walking northbound on the west sidewalk. ███████ decided to continue driving and pass her. As he was doing so, he heard a pop that he believed was a gunshot. ███████ believed he was being shot at. ███████ looked at Rice and saw her fire a round toward

| Report Officer | Printed At | |
|---|---|---|
| 5577/HUBERT,TERYL A | 10/21/2017 09:48 | Page 2 of 4 |

0049

---

17-33750   Supplement No 0085

## LONG BEACH POLICE DEPARTMENT

### Narrative

him. ███████ clarified what he saw saying that by the time he heard the first "pop" he was in the process of looking and identifying Rice. After identifying her, he saw her shoot a round into the dirt of the parkway on the west side of Studebaker approximately 3-4 houses north of Spring Street. ███████ told us after the second shot, ███████ hit the gas passing Rice.

███████ went on to say that Rice "had him" if she wanted to shoot him when he passed in the truck. ███████ meant that his position as he passed her was close enough for Rice to shoot him easily if she wanted to. ███████ told us he debated stopping and getting out to try and disarm her. ███████ wondered if she was really trying to kill him or if she was trying to get him to shoot her. ███████ was scared that he was going to lose his job or that his son was going to be fatherless so he decided to drive around the block. ███████ called 911 and told them he was shot at by his girlfriend and that she was armed and suicidal. ███████ added that he remained on the phone with the dispatcher to give a description of Rice as well as his residential address that she may be returning to. After giving the dispatcher this information, ███████ was contacted by a LBPD motor officer.

███████ overheard the police radio say that someone had Rice at gunpoint. Soon after, ███████ heard what he thought was about 40 gunshots in succession. ███████ backed off his estimate of 40 gunshots and said he wasn't sure. ███████ began to cry and told us he knew she was dead. ███████ told us he has numerous guns in his house. ███████ told us he has a safe as well as 4 department-issued guns. ███████ stated 3 of the 4 department- issued guns were on the couch ready to go for the warrant he was scheduled to serve the next morning. ███████ stated there were a 9mm and a .40 caliber pistol in his drawer that he usually takes running and the rest of his guns are locked in the safe. ███████ estimated that he has approximately 45 guns.

███████ stated that Rice owns 3 guns; a Smith and Wesson MMP Shield .40 caliber pistol, a Sig Sauer P220 .45 caliber pistol and a Glock 22. ███████ added that all pistols are registered to her. ███████ told us he had his Glock 27 on his person during this incident but never fired his gun. I asked ███████ for Rice's cell phone number and he gave it as ███████. I asked ███████ if we could download his phone in order to have the documentation of their conversations throughout the night. ███████ told us he would rather not turn over his phone because of all the personal content. ███████ was willing to screen shot the conversation between him and Rice. We later spoke to ███████ and he agreed to turn over his phone as well as signing a Consent to Search form allowing the Long Beach Police Department to download certain portions of his phone. For further, see Consent to Search form.

███████ told us that Rice did not own a car but often drove his pick up when he was at work using his work vehicle. ███████ stated that Rice worked at ███████ at Spring and Palo Verde in the City of Long Beach. I asked ███████ if Rice took any medication for her depression. ███████ told us that she does not nor does she take any other medications. ███████ added that Rice did not have any medical insurance. ███████ told us that Rice has never been violent with him but he did know of an incident Rice had with her ex-husband in Orange County where she was arrested for 243 (e)(1). ███████ added that the District Attorney's office never filed charges on her.

███████ talked about Rice trying to get her life back together by getting hired and/or joining the reserves. I asked ███████ what time he would estimate that the arguing began. ███████ estimated that it was approximately 2039 hours. I clarified if the fight was about Rice meeting his son and ███████ stated that the fight started because the date got changed for when ███████ son was coming for a visit. Rice was particularly sensitive to the topic of meeting ███████ son. ███████ gave us Rice's mom's name as ███████ and her father's name of ███████. ███████ did not have their phone numbers but stated they have a home in ███████ and ███████. ███████ gave us the address in ███████ as ███████. ███████ gave us an email that Rice's parents both use as ███████.

███████ told us Rice left the house after the argument at approximately 2108 hours. When Rice left she left her house key saying she would not need it anymore. ███████ did not see Rice leave with the gun. ███████ assumed she had her Glock pistol because she always kept it in the kitchen and when he looked that night after she left the gun was gone. I asked ███████ if he was able to hear any voices as he sat in his truck being contacted by police more specifically whether or not he could hear if Rice was yelling to police. ███████ told us

| Report Officer | Printed At | |
|---|---|---|
| 5577/HUBERT,TERYL A | 10/21/2017 09:48 | Page 3 of 4 |

0050

---

17-33750   Supplement No 0085

## LONG BEACH POLICE DEPARTMENT

### Narrative

he did not hear anything said by Rice and he could only hear a male voice that he believed to be police. ███████ could hear that male voice saying "Police".

I asked ███████ if there were other issues with he and Rice besides her not meeting ███████ son. ███████ told us he has dogs that he is extremely close to. ███████ started to cry about his relationship with

██████ told us he has dogs that he is extremely close to. ██████ started to cry about his relationship with his dogs. ██████ explained that he hated leaving his dogs at home with his schedule. ██████ told us that Rice was good to have around to help care for his dogs. I asked ██████ where his son lived and he told us he lives with his mom in ██████. I asked ██████ to describe the shooting. ██████ told us he did not see her fire the first round, he only heard it. After the first round, ██████ was able to focus on Rice and where she was on the sidewalk. ██████ saw Rice holding a gun in her right hand as she shot a round into the parkway in front of her enabling ██████ to see a flash of dirt kick up. ██████ estimated that he was approximately 20 feet north of Rice in the middle of the service road at the time she fired that second shot. ██████ added that had her shot not been low, the round was in his path and would have hit him if shot higher.

██████ was unsure if that shot was intentionally into the ground or if she was trying to provoke him into shooting her. ██████ told us that he gave Rice a cell phone and they have an App that allows them to share their location with each other. The last location ██████ had for Rice before the shooting was at the Frisbee golf course on the southeast corner of Spring Street and Studebaker Road. ██████ went on to tell us that Rice loves police officers and has always been a supporter of police. Detective Lasch asked ██████ how fast he was traveling on the service road as he was leaving his house and saw Rice. ██████ estimated that he was driving approximately 15-20 mph. ██████ went on to say he passed Rice on the sidewalk as he drove southbound on the service road of Studebaker. ██████ turned west which allowed him to continue on the service road of what was now Spring Street. ██████ then turned northbound on the first street, which is Petaluma, as he was calling 911. ██████ ended up on Rosebay eastbound and then turned southbound again on Studebaker but this time on the main road. ██████ saw several police cars arriving as he reached Spring Street again. ██████ then made a U-turn at Spring Street and continued northbound Studebaker. At this point ██████ realized he was being followed by a Long Beach Police motor officer. ██████ made a left on Rosebay (westbound) and quickly turned southbound Studebaker Road on the service road. ██████ felt that he was far enough north to not encounter Rice if she was continuing northbound on the west sidewalk of Studebaker.

██████ told us he did not see Rice again. ██████ described Rice as wearing a gray hoodie and black shorts or black bottoms. ██████ told us when he left the house he locked it and turned the alarm on. ██████ told us he was in a shooting last July in Orange County. ██████ told us that his ex-wife was more supportive of him during this time than Rice. Rice was jealous of ██████ and his job and his upbringing. ██████ told us Rice has been real happy in the last 6 months and they have been getting along. ██████ told us how much fun Rice was and how much he enjoyed being around her.

Our interview concluded at 0546 hours.

Exhibit D

**Daniel B. Alweiss**

| | |
|---|---|
| **From:** | Ben Nisenbaum <bnisenbaum@gmail.com> |
| **Sent:** | Tuesday, July 27, 2021 6:20 PM |
| **To:** | Daniel B. Alweiss |
| **Subject:** | Re: LS v. Henderson et al: Motion to quash subpoenas |

okay.

On Tue, Jul 27, 2021 at 5:38 PM Daniel B. Alweiss <Daniel.Alweiss@doj.ca.gov> wrote:

I will call you at 11:30 a.m.


**From:** Ben Nisenbaum <bnisenbaum@gmail.com>
**Sent:** Tuesday, July 27, 2021 5:05 PM
**To:** Daniel B. Alweiss <Daniel.Alweiss@doj.ca.gov>
**Subject:** Re: LS v. Henderson et al: Motion to quash subpoenas


Hi Dan,


My cell is best: (510) 282-3390.  I'm available now to about 5:30, or tomorrow after 11:30.

Sent from my iPhone


On Jul 27, 2021, at 3:50 PM, Daniel B. Alweiss <Daniel.Alweiss@doj.ca.gov> wrote:


Mr. Nisenbaum:


I just called your office and left a voicemail indicating I would like to speak with you on the telephone to meet and confer with you, pursuant to ND Loc. Rule 37-1, about the scope of your subpoena to the VA and Long Beach Police Department as relates to the personal records of Sgt. Henderson.

Please advise me of the best time and number to reach you for this conference.  We need to have this conference ASAP due to the very short date your subpoena calls for production.  Thank you.

Daniel B. Alweiss

Deputy Attorney General

Office of the Attorney General

1515 Clay Street, 21st Fl.

Oakland,  CA  94612-0550

Tel:  510-879-0005

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

Exhibit E

**Daniel B. Alweiss**

| | |
|---|---|
| **From:** | Ben Nisenbaum <bnisenbaum@gmail.com> |
| **Sent:** | Wednesday, July 28, 2021 9:04 PM |
| **To:** | Daniel B. Alweiss |
| **Cc:** | Chanin's Office |
| **Subject:** | Re: LS v. Henderson:  VA and Long Beach PD subpoenas |

Hi Dan,

I don't agree. I think that misses the point. You are making admissibility arguments, not discoverability arguments.  In order to protect the privacy rights, I would agree to a protective order on responsove documents.

I have a pretty good foundation for the PTSD issue as to Henderson, as I think you understand now.  The evidence would be relevant to the 4th Amanedment issues as well as 404b type evidence and Henderson's credibility.

Furthermore, there are in my view very significant discrepant claims by Henderson relative to other officers' accounts. And then there is the identical factual alleged-mistake in Villanueva.  None of this can be viewed in isolation, but taken as a whole I don't think there's any doubt we are entitled to discovery aimed at your client's mental health records in particular.  We certainly have no other Avenue of getting the discovery, and we have a compelling need for it.

In any event, I'm not persuaded by your points to withdraw the subpoena, so you would need to go forward with your motion.

Ben
Sent from my iPhone

On Jul 28, 2021, at 6:49 PM, Daniel B. Alweiss <Daniel.Alweiss@doj.ca.gov> wrote:

Mr. Nisenbaum:

I have reviewed the case of *Lam v. City of Los Banos*, 976 F.3d 986 (9th Cir 2020), and assessed your argument that this is authority for you to conduct wide-open discovery of Sgt. Henderson's health care, with a focus on his mental health treatment, from 2001 to the current.  In our discussion, you have agreed 2011/2010+/- time period (post military), to the current, would be more appropriate.

Although I am still studying the issue, I write this email to ask that you withdrawal these two subpoenas now (VA and Long Beach PD), without prejudice to re-serving them at a later date, provided you can show a credibility issue with Henderson.  Indeed, in *Lam* the shooting officer had a laundry list of inconsistencies in his testimony as relates to the scissors, and two eye witnesses never saw the scissors near the decedent's body, and the one officer who said he saw them, but inexplicably slid them away before the photo of the victim, is also a red flag.  Under those facts, I would agree you should be entitled to pursue medical & psych records.  I would go further and agree you could pursue vision records and even attempt a neuropsych IME, in good faith.

1

Contrasted here, there are no credibility issues with Henderson.  At most, he had an officer's name wrong, but immediately clarified that on the scene.  It is my impression that absent some showing of Henderson's credibility being in issue, your subpoenas are unwarranted and prejudicial to Henderson, and certainly not probative of what he perceived that evening.  Additionally, when this discovery is weighed against the privacy interests of medical treatment and the strong public policy to encourage mental health treatment, I believe the judge would be justified in quashing your subpoenas now.  Perhaps after taking the officers' depositions you find a credibility issue.  In that case, I recommend we address the issue again at that point.

I will follow with a letter by Friday, addressing the scope of our meet and confer on this matter.

Daniel B. Alweiss
Deputy Attorney General
Office of the Attorney General
1515 Clay Street, 21st Fl.
Oakland, CA  94612-0550
Tel:  510-879-0005


CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

Exhibit F

## Daniel B. Alweiss

**From:** Ben Nisenbaum <bnisenbaum@gmail.com>
**Sent:** Thursday, July 29, 2021 12:56 PM
**To:** Daniel B. Alweiss
**Cc:** Chanin's Office; Ruby Yearling
**Subject:** Re: LS v. Henderson - subpoenas to VA Long Beach and Long Beach PD

As I indicated, please move forward with your motion to quash.

Ben


Sent from my iPhone


On Jul 29, 2021, at 12:17 PM, Daniel B. Alweiss <Daniel.Alweiss@doj.ca.gov> wrote:

Mr. Nisenbaum:

   This is my final request that you kindly withdrawal your subpoenas to VA Long Beach and Long Beach PD which relate to the medical and mental health records of my client, Sgt. Henderson.

   In our meet and confer effort, you stated you did not know if these subpoenas met HIPPA and federal law requirements as relates to privacy rights.

   Under 5 U.S.C. section 522(a):  "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b).  This is the "no disclosure without consent" rule.  And Sgt. Henderson does not consent.

   Also, Sgt. Henderson objects to such subpoenas and disclosures under 45 CFR section 164.512(e)(1)(iii).

   The courts are also clear that a subpoena under your signature "is not a court order."  (5 U.S.C. § 552a(b)(11).)  Your attempt to move forward with these subpoenas is in direct violation of 5 U.S.C. § 552a(b), and I respectfully request you immediately notify the recipients you are withdrawing these subpoenas, and file a noticed motion for a court order to permit these disclosures.

   Absent your agreement, we will have to file a motion to quash and seek a protective order.


Daniel B. Alweiss
Deputy Attorney General

1

Office of the Attorney General
1515 Clay Street, 21st Fl.
Oakland, CA  94612-0550
Tel: 510-879-0005

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.